VAN COTT, BAGLEY, CORNWALL & McCARTHY
Robert H. Scott (10981) rscott@vancott.com
36 South State Street, Suite 1900
Salt Lake City, Utah  84111
Telephone:  (801) 532-3333
Facsimile:  (801) 534-0058

*Attorneys for Defendants Bank of America, N.A., erroneously named as Bank of America, Inc., BAC Home Loans Servicing, LP,  Countrywide Home Loans, Inc., Countrywide Home Loans Inc. dba America's Wholesale Lender, Green Tree Servicing, LLC and Mortgage Electronic Registration Systems, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CHARLES and PATRICIA E. SACCIO,<br><br>          Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, INC., BAC HOME LOAN SERVICING LP, COUNTRYWIDE HOME LOANS, INC., AMERICAS WHOLESALE LENDER, GREENTREE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, JOHN DOES I AND II and JOHN DOES 3-10 inclusive,<br><br>          Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br>Case No. 2:11-cv-00511-TS<br><br>District Court Judge:  Ted Stewart<br><br>          (Filed Electronically) |

Defendants Bank of America, N.A. (erroneously named as Bank of America, Inc.) (**BofA**), BAC Home Loans Servicing, LP (**BAC**), Countrywide Home Loans, Inc. (**Countrywide**), Countrywide Home Loans, Inc. dba America's Wholesale Lender (**AWL**), Green Tree Servicing, LLC (erroneously named as GreenTree) (**Green Tree**), and Mortgage Electronic Registration Systems, Inc. (**MERS**) (collectively defendants) file this memorandum in support of their motion to dismiss plaintiffs' complaint.

# I.    INTRODUCTION

Plaintiffs Charles and Patricia Saccio (collectively **plaintiffs** or **the Saccios**) do not dispute that they defaulted on their home loan or that nonjudicial foreclosure is an appropriate remedy.  Rather plaintiffs merely challenge whether any of the defendants are entitled to foreclose.  In their words, plaintiffs "seek[] to establish who 'owns the debt' secured by the Saccios' Trust Deeds and who has the right to notice a default and foreclose." (Compl. ¶ 5).  Plaintiffs assert further that they "are actually defending the right of a proper foreclosor [sic] (which Defendants claim they are) to foreclose."  (*Id.* ¶ 132).  This position is legally unsupportable.  Plaintiffs have no legal right or standing to upset the nonjudicial foreclosure process with their contention that defendants are not entitled to foreclose.  Plaintiffs admit that they are not the real party in interest to allege any claims regarding who the proper party to foreclose may be and thus, the Court cannot decide such claims.  Defendants have complied with the applicable provisions of the Utah foreclosure laws and the Court should not create new requirements, merely because plaintiffs contend that some unknown entity's rights to foreclose might be affected.

There is no legitimate controversy regarding the right of defendants to foreclose on the property at issue.  Though plaintiffs' complaint includes many pages of cut and paste pleadings relating to MERS and the securitization of home loans generally, they point to nothing out of the ordinary about the foreclosure process followed here.  Instead plaintiffs seek to use arguments already rejected by Utah state and federal courts to argue that the foreclosure of their property—and virtually every nonjudicial foreclosure in Utah—is invalid.

Plaintiffs' complaint also fails because plaintiffs filed for bankruptcy protection in 2010 and failed to schedule any claims against defendants.  Thus, plaintiffs lack standing to bring the claims and should now be judicially estopped from asserting the claims.

Plaintiffs' allegations relating to loan modifications also fail to sufficiently support claims for negligence, misrepresentation, promissory estoppel or the breach of the covenant of good faith and fair dealing.  Plaintiffs vaguely allege that BofA and Green Tree "misrepresented that Mr. Saccio may qualify for a loan modification that would reduce their monthly payment."  (Compl. ¶ 143).  However, plaintiffs have not pleaded the claim with sufficient particularity and cannot allege any damages as a result of the alleged misrepresentations.   Moreover, plaintiffs acknowledge that BAC **_did offer_** a loan modification, but plaintiffs failed to timely respond.  (Compl. ¶ 113).  Thus, defendants did not make any actionable misrepresentation.

Plaintiffs' action fails to state anything remotely close to a claim upon which relief may be granted.  Plaintiffs' complaint should be dismissed in its entirety with prejudice.

## II.      STATEMENT OF FACTS

On August 31, 2006, plaintiffs obtained a purchase money loan in the amount of $975,000 from Countrywide.  The loan amount was secured by a deed of trust recorded against real property located at 7 Ashley Court, Park City, Utah 84060 (the **property**).  (Request for Judicial Notice filed concurrently herewith (**RJN**), Ex. 1).   Plaintiffs also obtained a second note and deed of trust from AWL.  (Compl. ¶ 27).  BAC began

servicing plaintiffs' first note, and Green Tree began servicing the second note, sometime before plaintiffs began having financial difficulties in 2008.  (Compl. ¶¶ 108, 109).[1]

Plaintiffs began having trouble making their payments in November 2008. (Compl. ¶¶ 102-107).  On November 4, 2009, MERS executed a Corporation Assignment of Deed of Trust/Mortgage assigning its interest in the deed of trust to Deutsche Bank National Trust Company, as Trustee for the Harbor View Mortgage Trust 2006-9 Trust Fund (**Deutsche Bank National Trust Company**). The Assignment was recorded in the public records on November 12, 2009.  (RJN, Ex. 2).  On November 4, 2009, Deutsche Bank National Trust Company substituted ReconTrust Company, N.A. (**ReconTrust**) as the substituted trustee for the first deed of trust.  The Substitution was recorded in the public records on November 12, 2009. (RJN, Ex. 3).  ReconTrust then executed and recorded a notice of default and election to sell the property on November 12, 2009. (RJN, Ex. 4).

After receiving the notice of default, plaintiffs filed a voluntary bankruptcy petition under chapter 7 on March 18, 2010.  (RJN, Ex. 5).  In their chapter 7 filings, plaintiffs did not list any claims against defendants in their bankruptcy schedules.  (RJN, Ex. 6).  Plaintiffs' bankruptcy was dismissed on May 19, 2010.  (RJN, Ex. 7).  Plaintiffs then filed a secondary voluntary chapter 7 petition on May 25, 2010.  (RJN, Ex. 8). Plaintiffs did not schedule any claims against defendants in this second filing.  (RJN, Ex. 9).  Plaintiffs were discharged from chapter 7 on September 9, 2010.  (RJN, Ex. 10).

---

[1] Throughout the Complaint plaintiffs allege that they BofA made certain representations to plaintiffs. However, BAC was plaintiffs loan servicer under the first deed of trust, not BofA.

### III.    LEGAL STANDARD

On a motion to dismiss made under Fed. R. Civ. Proc. 12(b)(6) for "failure to state a claim upon which relief can be granted," dismissal is proper if the plaintiff fails to set forth allegations to state a claim that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although courts accept the truth of all alleged facts in the complaint, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (citation omitted); *see also Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (noting that courts accept well-pleaded facts, not conclusory allegations); *Coburn v. Nordeen*, 72 Fed. Appx. 744, 746 (10th Cir. 2003).  Rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).

Moreover, the Court must not assume the plaintiff can prove facts he has not alleged, or that the defendant has violated laws in ways not alleged.  *See Assoc. Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Before *Twombly*, a complaint may have withstood a motion to dismiss "if it left open the possibility that a fact not alleged in the complaint could render the complaint sufficient." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  But now, a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.  A complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  This means "naked assertions devoid of further factual enhancement" no longer suffice to state a claim.   *Id.* (internal quotation omitted). Dismissal with prejudice is proper if "it is clear that the complaint could not be saved by

any amendment." *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).  Under Rules 8(a) and 12(b)(6), the court must determine whether, if the allegations of the complaint are true, it is plausible, not merely possible, that the plaintiff is entitled to relief under the relevant law.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  If the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiffs have brought a claim that is conceivable, but that does not meet the plausibility requirement. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009).  Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

## IV.    ARGUMENT

### A.    Because Plaintiffs Filed for Bankruptcy After these Claims Arose, Plaintiffs Lack Standing To and Should Be Judicially Estopped From Bringing the Claims.

#### 1.    Plaintiffs Lack Standing to Bring their Claims.

As explained in the facts above, plaintiffs twice filed for chapter 7 bankruptcy protection without scheduling any claims against defendants. (RJN, Exs. 5-10). Thus, plaintiffs now lack standing to bring these pre-petition claims.

"The filing of a petition in bankruptcy commences the case and creates a bankruptcy estate."  11 U.S.C. § 541(a)(1).  The bankruptcy estate consists of "all legal or

equitable interests of the debtor in property as of the commencement of the case" (11 U.S.C. § 541(a)(1) and "[a]ny interest in property that the estate acquires after the commencement of the case."   11 U.S.C. § 541(a)(7).   Section 541's definition of "property" is interpreted broadly to include causes of action.   *United States v. Whiting Pools, Inc*., 462 U.S. 198, 205 (1983); *Sender v. Buchanan (In re Hedged-Investments Associates, Inc.,* 84 F.3d 1281, 1285 (10th Cir. 1996); *Ammons v. La-Z-Boy, Inc.*, No. 1:04-CV-67-TC-SA, 2009 WL 3460306 at *6 (D. Utah Oct. 20, 2009).

The law is clear that "in a chapter 7 bankruptcy case, any unliquidated lawsuits initiated by a debtor prepetition (*or that could have been initiated by the debtor prepetition)* become part of the bankruptcy estate subject to the sole discretion and control off the trustsee… ."   *See Ammons*, 2009 WL 3460306 at *7 quoting *In re Bailey*, 306 B.R. 391, 392 (Bankr. D. D.C. 2004) (emphasis added).   Assets, such as causes of action against a creditor, not listed on bankruptcy schedules are not abandoned when the bankruptcy estate is closed because property must be formally scheduled to be abandoned as a matter of law.   *Id.* at *6 ("where the property has not been scheduled as required by § 521(1), the close of the case does not abandon the property to the debtor and it remains property of the estate.").   Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.   *See* 11 U.S.C. § 554(d).

Plaintiffs twice filed for chapter 7 bankruptcy protection and failed to schedule the claims they assert in the complaint.   (RJN, Exs. 5-10).   Plaintiffs were then discharged from chapter 7 on September 9, 2010.   Plaintiffs' claims—which are based on purported misrepresentations by defendants starting at least as early as *April 2009*—

undeniably arose pre-petition.  (Compl. ¶ 113).  The claims therefore became property of the bankruptcy estate upon filing for bankruptcy, and remain property of the bankruptcy estate until they are abandoned.  Because plaintiffs did not schedule the claims, they have not been abandoned by the trustee and thus, plaintiffs lack standing to assert any claims that arose prepetition.

2.        **Plaintiffs' Complaint is Barred by Judicial Estoppel.**

Plaintiffs have abused the bankruptcy process by twice seeking bankruptcy protection but not revealing to the Court, the trustee or their creditors that they possessed potential claims against their secured lenders.  Under the doctrine of judicial estoppel, the Court should protect the integrity of the bankruptcy process, and of the court system in general, by estopping plaintiffs from now suing defendants for these prepetition claims.

Judicial estoppel is an equitable doctrine developed by the courts to prevent litigants from improper use of the courts by advancing inconsistent positions in the same, or different, cases.  *See Eastmen v. Union Pac.,* 493 F.3d 1151, 1156 (10th Cir. 2007).  In determining whether the doctrine applies, the court considers three factors: (1) a party takes a clearly inconsistent position with a former position; (2) whether the party succeeded in persuading a court to accept the former position; and (3) whether the party seeking to assert an inconsistent position would gain an unfair advantage if the litigation is not estopped.  *Id.* at 1156.  In exchange for the protection of the bankruptcy laws, the debtor is required to "fully and accurately disclose his financial status."  *Id*. at 1159.  By failing to schedule claims, the debtor obtains an "unfair advantage over his creditors" and should therefore be estopped from later pursuing the claims.  *Id.* at 1160.

Here, just as in *Eastmen*, plaintiffs seek to abuse the judicial process by taking inconsistent positions.  Plaintiffs brought their bankruptcy filing to forestall the

foreclosure process and to obtain discharge of their debts.  Estoppel is proper even where the bankruptcy case has been dismissed, because "[t]he debtor, once he files for bankruptcy, disrupts the flow of commerce and promptly benefits from an automatic stay."  *Eastmen*, 493 F.3d at 1159.  Allowing plaintiffs to proceed with this action would reward plaintiffs' gamesmanship and potentially deprive their prior discharged creditors from the potential value of the claims, if there were any.  Plaintiffs should be judicially estopped from doing this.

### B. Plaintiffs Are Not Entitled to Declaratory Relief.

Plaintiffs' first cause of action for declaratory relief should be dismissed because plaintiffs have not shown any legitimate basis to challenge the foreclosure of their property.  By the first cause of action, plaintiffs request a declaration that defendants "have no right to foreclose on their own behalf or should be required to demonstrate any right they claim to foreclose as agents of the investors in MBS."  (Compl. ¶ 141). Plaintiffs are not entitled to any such relief.

#### 1. The Foreclosure Proceedings Are Proper According to Utah law.

The deed of trust identifies MERS as the beneficiary.  (RJN, Ex. 1).  It expressly provides "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." (*Id*. at pg. 2).  The deed of trust further provides "MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property."  (*Id.* at pg. 3). MERS then assigned those rights under the deed of trust to Deutsche Bank National Trust Company.  (RJN, Ex. 2).

Pursuant to UTAH CODE ANN. § 57-1-22, Deutsche Bank National Trust Company then executed a substitution of trustee by which ReconTrust was appointed the successor trustee and afforded all the powers of the original trustee.  (RJN, Ex. 3).  Pursuant to UTAH CODE ANN. § 57-1-22, ReconTrust, as the substituted trustee, had the authority to record the notice of default and did so according to the statutes.  (RJN, Ex. 4).  The foreclosure process here followed Utah's non-judicial foreclosure statutes.

Plaintiffs have no legal basis[2] to challenge the foreclosure and the action should therefore be dismissed.  What plaintiffs ask the Court to do here, would essentially create new requirements not embodied in the comprehensive non-judicial foreclosure statutes of Utah.  *See* Utah Code Ann. §§ 57-1-19 *et seq.*   Plaintiffs cannot dispute that they are in default or that some party is entitled under the deed of trust to foreclose.  Instead, they argue that they "are actually defending the right of a ***proper foreclosor*** (which Defendants claim they are) to foreclose."  (Compl. ¶ 132) (emphasis added).  However, plaintiffs have no standing to raise such an argument and the Utah Code provides them no remedy.  Plaintiffs should not be permitted to create new requirements for the non-judicial foreclosure process.

## 2.    MERS Is a Proper Beneficiary Under the Deed of Trust.

Plaintiffs also allege that "MERS is not the real party in interest since it styles itself merely as a nominee of the assignee of the beneficial interest in the Trust Deed" and

---

[2] Plaintiff's claims are also precluded by equitable principles.  The Utah District Court has held that where a plaintiff seeks rescission under a common law theory, the court may require the plaintiff to establish his ability to tender the amount due under the loan.  *See McGinnis v. GMAC Mortgage Corp.*, No. 2:10-cv-00301-TC, 2010 WL 3418204, *5 (D. Utah August 27, 2010) (discussing *Grealish v. American Brokers Conduit*, No. 2:08-cv-765, 2009 U.S. Dist. LEXIS 84842, 2009 WL 2992570 (D. Utah Sept. 16, 2009).  The same principle should apply here; plaintiff is not entitled to equity until they do equity themselves by paying their outstanding debt.  *See e.g., Huston v. Lewis*, 818 P.2d 531, 536-37 (Utah 1991) ("It is a well-established principle of equity that in order to claim equitable relief a party must have acted in an equitable fashion.").  Because plaintiff admittedly cannot pay off the debt, he is not entitled to stop the foreclosure sale.

"MERS is not a valid Trust Deed beneficiary" and therefore the foreclosure proceedings are improper.  (Compl. ¶¶ 88, 89).  To the contrary, numerous federal courts in Utah have upheld MERS's authority to act as a beneficiary, conduct foreclosure proceedings, and to make assignments of deeds of trust.  *See Van Leeuwen v. Sib Mortgage Corp.*, Case No. 2:10-CV-730 TS, 2011 U.S. Dist. LEXIS 885 (D. Utah Jan. 4, 2011) ("The central theory of Plaintiff's Complaint is that MERS lacks authority to foreclose on the deed of trust and to assign the deed of trust to a successor. This Court has already considered, and rejected, this theory and the Court finds no need to repeat its prior rulings on this issue."), *citing Witt v. CIT Group/Consumer Finance Inc.*, No. 2:10-cv-440 TS, 2010 WL 4609368 (slip copy) (D. Utah November 5, 2010) *and Foster v. BAC Home Loan Servicing, LP*, No. 2:10-cv-247 TS, 2010 WL 3791976 (D. Utah Sept. 22, 2010); *McGinnis*, 2010 WL 3418204, *6 (D. Utah August 27, 2010)(collecting cases); *Rhodes v. Aurora Loan Servicers LP*, No. 2:1-cv-00230 TC, 2010 WL 3219310, *2 (D. Utah Aug. 13, 2010) ("Courts have consistently held that MERS has the authority to foreclose on behalf of the lender and that MERS need not possess the note in order to appoint a trustee in behalf of the lender who does hold the note.").[3]  Moreover, the Utah Code makes clear that for the purposes of a deed of a trust a "beneficiary" is "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest."  Utah Code Ann. § 57-1-19.  Plaintiffs cannot dispute that MERS was designated as the beneficiary of the deed of trust in accordance with this section.

---

[3] Three recent unpublished slip opinions from Utah state courts have also adopted the federal district court's reasoning and rejected plaintiff's arguments concerning MERS and securitization of the note.  *See Evans v. Intermountain Mortgage Co., et al.*, Case No. 100923044 (March 10, 2011); *Pugh v. Woodall, et al.*, Case No. 100921173 (March 25, 2011); *Merrill v. Mortgage Electronic Registration Systems, Inc.*, Case No. 090920848 (March 28, 2011).

Thus, plaintiffs' arguments challenging whether MERS is truly a beneficiary under the deed of trust are baseless.

### 3.    Securitization of the Note is Irrelevant to Plaintiffs' Claims.

Plaintiffs also contends that, because the note has allegedly been securitized, "[o]nly the owners of the debt (the Notes)—the investors in the securities backed by Plaintiffs' mortgage—have the right to foreclose on the Note's security (the Subject Property)." (Compl. ¶ 44). Plaintiffs are wrong – securitization of the note does not affect the ability of the beneficiary to initiate foreclosure. *Commonwealth Prop. Advocates v. First Horizon Home Loan*, No. 2:10-cv-375, *4 (D. Utah Nov. 16, 2010). "[S]ecuritization merely creates a separate contract, distinct from Plaintiff's debt obligations under the reference credit (i.e. the Note)… and does not free [plaintiffs] from the express terms of the" deed of trust. *Id.* at *4 (citing *Larota-Florez v. Goldman Sachs Mortgage Co.*, No. 01:09cv1181, 2010 WL 1444026, *6 (E.D. Va. Apr. 8, 2010)); *Knudsen v. BAC Home Loan Servicing, LP*, 791 F.Supp.2d 636, 641 (D. Utah 2010).

This is because the trust deed that plaintiffs signed specifically allows MERS, as nominee for Lender's **successors and assigns**, to foreclose in the event of a default. (RJN, Ex. 1) ("MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . .") There is, "[n]othing in law or logic supports that such a delegation would constitute a separation of the rights under the trust deed from the ownership of the note, even accepting Plaintiff' interpretation of Utah Code Ann. § 57-1-35." *Marty v. Mortgage Electronic Registration Systems*, No. 1:10-cv-00033, 2010 U.S. Dist. LEXIS 111209, *11 (D. Utah October 19, 2010). Because this foreclosure was conducted in compliance with Utah law, plaintiffs'

request for declaratory relief must be dismissed. Securitization of the note does not create a basis for relief.

### 4.    Defendants Are Not Required to Establish Standing In Order to Foreclose.

Plaintiffs allege further that Defendants have refused to provide "requested evidence showing the Notes' default and the authority to enforce the Trust Deeds" and that "the Defendants are subject to the jurisdiction of the court and required to satisfy requirements of standing and the authority to conduct the sale before conducting it." (Compl. ¶ 136). Essentially, plaintiffs request that the Court create additional requirements for lenders to follow in order to conduct a non-judicial foreclosure sale. Plaintiffs suggest, without any legal basis, that the lender must first establish its "standing" and its "authority to conduct the sale." These claims, if accepted, would eviscerate the purpose of the non-judicial foreclosure process and create judicial limitations not envisioned by the legislature.

As this Court recently held in *Wade*, "Defendants are not plaintiffs in this lawsuit, and they are not seeking affirmative relief. Defendants in a lawsuit do not have to establish standing in order to defend themselves against a judgment. [Plaintiffs'] arguments to the contrary are absurd and fail as a matter of law." *Wade v. Meridias Capital, Inc.*, Case No. 2:10cv998 (D. Utah, Hon. David Sam, March 17, 2011).[4] Thus, there is no requirement for defendants to establish standing, and plaintiffs should not be entitled to alter the non-judicial foreclosure procedures by creating such a requirement.

---

[4] The similarities between the *Wade* decision and this action are far from coincidental, and demonstrate the cut-and-paste nature of the instant complaint. In addition to sharing the standing and adhesion contract theories, both actions "are dependent on the 'split the note' and 'MERS lacks authority' theories which have previously been rejected by this Court, and are therefore not viable as a matter of law and all should be dismissed with prejudice." *Wade*, Case No. 2:10cv998.

**C.     Plaintiffs' Complaint Fails to Plead The Existence of Any Actionable Misrepresentation.**

Plaintiffs' second and third causes of action purport to state claims for intentional and negligent misrepresentation against BofA and Green Tree based on their allegation that BofA "misrepresented that Mr. Saccio *may qualify* for a loan modification that would reduce their monthly payment."  (Compl. ¶ 143) (emphasis added).  Based on plaintiffs' own allegations, this claim fails, because BAC (not BofA) offered plaintiffs a loan modification and thus it was not a false statement.  Moreover, the representation cannot amount to a false representation because it was too uncertain.

To state a claim for intentional misrepresentation, a plaintiff must plead : "(1) [t]hat a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage." *Conder v. A.L. Williams & Associates, Inc.*, 739 P.2d 634, 637 (Utah Ct. App. 1987). Similarly, to state a claim for negligent misrepresentation, a plaintiff must plead that: (1) one having a pecuniary interest in a transaction, (2) is in a superior position to know material facts, and (3) carelessly or negligently makes a false representation concerning them, (4) expecting the other party to rely and act thereon, and (5) the other party

reasonably does so and (6) suffers loss in that transaction.  *DeBry v. Valley Mortgage Co.*, 835 P.2d 1000, 1008 (Utah App. 1992).[5]

Plaintiffs allege that BofA "misrepresented that Mr. Saccio **may qualify** for a loan modification that would reduce their monthly payment."[6]  (Compl. ¶ 143) (emphasis added), but fail to explain how BAC could possibly predict, *before* the submission of any financial paperwork, that he would qualify for a loan modification.[7]  A statement that plaintiffs "may" qualify for a loan modification prior to the submission of any financial documents is not a statement of fact.  It is simply a statement that a future event is possible.  A statement of a future event (as opposed to a presently existing fact) cannot be the basis for a misrepresentation claim.  *See Andalex Resources, Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah App. 1994).[8]  Plaintiffs do not even allege that this statement was false – it may have indeed been likely that Mr. Saccio would qualify, but that he simply did not qualify.  In fact, based on plaintiffs' own allegations, it appears that the statement

---

[5] Plaintiffs also must prove the existence of a duty.  *See Smith v. Frandsen*, 94 P.3d 919, 923 ("Without a duty [to disclose], there can be no negligence as a matter of law….").  It is doubtful that Utah law recognizes such a duty as between a borrower and a loan servicer.  *See, e.g. Rhodes v. Wells Fargo Home Mortgage*, No. 2-10cv393-TS, 2010 WL 3222414, at *4 (D. Utah Aug. 16, 2010) ("under Utah law, a lender does not owe a borrower any fiduciary duties, including such alleged duty to investigate Plaintiff's ability to repay a loan").

[6] Plaintiffs do allege at other points that BofA that plaintiffs were misled "into believing they **would** qualify or obtain a loan modification."  (*See e.g.* Compl. ¶ 157).  However, these statements are contrary to the allegations that BofA **may** qualify for a modification and therefore should be disregarded as inconsistent.

[7] Though unclear from plaintiffs' complaint, to the extent that plaintiffs applied for a loan modification under the federal Home Affordable Modification Program (**HAMP**), plaintiffs' misrepresentation and breach of duty of good faith claims are barred because "there is no private right of action under HAMP."  *Shurtliff v. Wells Fargo Bank, N.A.*, 2010 WL 4609307, *3 (D. Utah Nov. 5, 2010); *see also Marks v. Bank of America, N.A.*, 2010 WL 2572988, *5 (D. Ariz. June 22, 2010) ("Congress intended that a private cause of action [under HAMP] was not permitted") *citing Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001); *Ingalsbe v. Bank of Am., N.A.*, No 1:10-cv-1665, 2010 WL 5279839, at *5 (E.D. Cal. Dec. 13, 2010) (collecting cases).

[8] Notably, plaintiffs failed to satisfy the one exception noted in *Andalex*, that a promise of future performance may be the basis for a fraud claim where the promising party never intended to perform, because plaintiffs have not pled that BAC *promised* to modify their loan.  Rather, they only suggest that BofA suggested plaintiffs may be entitled to a modification.

was not false, as Plaintiffs have alleged that BAC did offer them a modification. (Compl. ¶¶ 113, 123).

Plaintiffs also acknowledge that there was an application process including forms and submission of information before any modification could be issued. Thus, plaintiffs could not reasonably expect any sort of guarantee as to an outcome (even if they had alleged one, which they do not). Thus, the promise that plaintiffs "likely qualified" for a loan modification, even if made to plaintiffs, necessarily included the contingency that plaintiffs would have to apply for and be approved for such a modification. Thus, any detrimental reliance on these statements would not be reasonable.

In addition, plaintiffs fail to plead their misrepresentation allegations with the requisite specificity. *See* FED. R. CIV. PROC. 9(b). There is no allegation as to who made such representations or when or how they were made. This is particularly important here because plaintiffs allege that BofA made misrepresentations to them. However, BofA had no contact with plaintiffs regarding their loan -- plaintiffs' note was being serviced by BAC. Moreover, plaintiffs group BofA and Greentree together and purport to allege the exact same statements were made by each party even though the communications cover two separate loans. Thus, without identifying even the proper party, or the specifics of any allegation, plaintiffs have not pleaded this claim with sufficient particularity.

In addition, the misrepresentation claims should be dismissed because plaintiffs have not sufficiently pleaded reliance or causation. Even accepting plaintiffs' theory as true, they provide no explanation regarding how defendants' alleged false representations regarding plaintiffs' potential ability to qualify for a loan modification resulted in

foreclosure. The simple fact is that plaintiffs' failure to pay their mortgage was the cause of their default and impending foreclosure. There is no factual connection between plaintiffs' default and any statements or omissions by defendants relating to the availability of a loan modification. Plaintiffs allege that they "continued making payments to Bank of America and Greentree with the understanding that this would allow them to obtain a loan modification and avoid foreclosure on their home" and that "they now face foreclosure, which may have been avoided had Bank of America and Greentree not misrepresented facts to the Saccios'." (Compl. ¶¶ 158, 159). However, plaintiffs were obligated by the notes to make payments, and thus were not "damaged" by making the payments they were contractually obligated to make.

### D.    Plaintiffs Cannot State a Claim for Promissory Estoppel.

Plaintiffs also seek to state a claim for promissory estoppel alleging that BofA and Greentree made a promise "to the plaintiffs that they would obtain a loan modification and that they would do everything they could to assist the Plaintiffs in keeping their home." (Compl. ¶ 161). This allegation is not sufficient to state a claim against defendants.

In order to state a claim for promissory estoppel, plaintiffs must plead that:

(1) [t]he plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.

*Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007). The plaintiffs can only recover on a claim for promissory estoppel if they "reasonably relied" on the alleged promise. Here, plaintiffs do not allege that their reliance was reasonable, nor can

they.  As noted above, plaintiffs admit that at most BAC promised that plaintiffs "may qualify" for a modification and required plaintiffs to submit an application to be considered.  Such statements are not sufficiently certain and definite to constitute a binding promise.  *Nunley v. Westates Casing Services, Inc.*, 989 P.2d 1077, 1089 (Utah 1999) ("the alleged promise must be ***reasonably certain and definite***, and a claimant's subjective understanding of the promissor's statements cannot, without more, support a promissory estoppel claim.") (emphasis added).  Moreover, it would not be reasonable for plaintiffs to detrimentally rely on statements of a contingent future event that required approval.  *Youngblood*, 158 P.3d at 1095 ("Although we are sympathetic toward those who rely on an agent's misrepresentations, recovery can be permitted only when that reliance is reasonable.  To do otherwise would allow too much room for sympathy, passion, and error, and drastically diminish the predictability needed …").  Plaintiffs' reliance must be objectively reasonable.  *Rose v. Allied Dev. Co.*, 719 P.2d 83, 87 (Utah 1986).  Under the facts pleaded in the complaint, even if assumed true, plaintiffs' reliance of the "promise" that they might qualify for a loan modification was not objectively reasonable.

Finally, plaintiffs should not be entitled to the equitable relief of promissory estoppel because they have not paid their debt.  Promissory estoppel is an equitable claim and as such requires that plaintiffs first do equity before seeking relief.  *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 174 (Utah Ct. App. 1993); *Huston v. Lewis*, 818 P.2d 531, 536-37 (Utah 1991) ("It is a well-established principle of equity that in order to claim equitable relief a party must have acted in an equitable fashion.").  Plaintiffs have not alleged that they have paid or even offered to pay their outstanding debt.

### E.      Plaintiffs' Quiet Title Claim Fails.

Plaintiffs fifth claim seeks quiet title alleging only that "the Saccios' Trust Deeds and Notes were intentionally separated by assignment of the Trust Deeds without assignment of the Notes during the securitization process, thus lodging foreclosure rights with the investors in the MBS" and that "[s]ubsequent to securitization of the Saccios' Notes, Countrywide, Bank of America, BAC, America's Wholesale Lender, Greentree and MERS have no interest in the Subject Property." (FAC, ¶¶ 126, 127). Because the claim is based entirely on their securitization and splitting the note theories, the claim fails. *See* section IV.A.3.

A quiet title action "is a suit brought to quiet an existing title against an adverse or hostile claim of another and the effect of a decree quieting title is not to vest title but rather is to perfect an existing title as against other claimants." *Nolan v. Hoopiiaina (In re Hoopiiaina Trust)*, 144 P.3d 1129, 1137 (Utah 2006). "To succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not the weakness of a defendant's title or even its total lack of title." *Collard v. Nagle Constr.*, 57 P.3d 603, 607 (Utah App. 2002) (quoting *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048-49 (Utah 1983)). Plaintiffs do not assert the strength of their own claim, or seek to perfect title in themselves, but rather only attack the alleged interest of the defendants in the property. In fact, plaintiffs even admit that they are not the real party in interest. (Compl. ¶ 132). These allegations are insufficient to maintain a quiet title claim. Plaintiffs have not sufficiently alleged that they are entitled to have title quieted in them and cannot simply rely on the argument that their defendants do not have a sufficient claim to the title.

Finally, because plaintiffs are in default under the note (which the complaint acknowledges), any title claimed by them is clouded.  *See Marty*, 2010 U.S. Dist. LEXIS 111209.  Thus, for this additional reason, plaintiffs are not entitled to quiet title.

      **F.**      **Plaintiffs Cannot Establish a Breach of the Duty of Good Faith and Fair Dealing.**

Plaintiffs' sixth claim for relief alleges a breach of the duty of good faith and fair dealing.  While plaintiffs purport to state the claim against all defendants, the only defendants identified in the allegations are BofA and Greentree.  Thus, this cause of action should be dismissed as to all defendants except BofA and Greentree.

With regard to BofA and Green Tree, plaintiffs cannot point to any contract between plaintiffs and BofA.  Instead, plaintiffs allege that BofA and Green Tree "became a party to the Trust Deeds and/or Notes through the assignment of the Trust Deeds and/or Notes by Countrywide and America's Wholesale Lender."  (Compl.  ¶ 174).  This argument fails for several reasons.

First, BofA was not assigned the beneficial interest under this deed of trust, Deutsche Bank National Trust Company was the assignee.  (RJN, Ex. 3.)  BofA had no contractual relationship with plaintiffs and BAC was merely the servicer of plaintiffs' loan; BAC was not the lender, and is not a party to the deed of trust.  The existence of a contractual relationship between plaintiffs and defendants is an essential element of a breach of covenant of good faith and fair dealing claim.  *See, e.g., Brown v. Moore*, 973 P.2d 950, 954 (Utah 1998).  Neither BofA nor BAC have any contractual relationship with plaintiffs upon which a claim could be granted.

Moreover, plaintiffs have not pled that any of the defendants did anything to destroy plaintiffs' rights under the notes or deeds of trust.  "Under the covenant of good

faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *Brown*, 973 P.2d at 954.   A breach of implied covenant claim cannot be used to create new rights not provided for by the contract.  *Id.* at 955; *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 55 (Utah 1991) ("However, the covenant of good faith and fair dealing cannot be construed to establish new, independent rights or duties not agreed upon by the parties.")  Since the note and deed of trust do not provide a right to a loan modification, plaintiffs cannot allege defendants breached the covenant of good faith and fair dealing by failing to provide one or negotiate one.  "Where there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom."  *Craner v. Northwestern Mutual Life*, 12 F. Supp. 2d 1234, 1242 (D. Utah 1998).

Plaintiffs' reasonable expectations under the deeds of trust and notes should have been that if they defaulted, then the loan would be foreclosed.  Plaintiffs concede they obtained a loan and then defaulted thereunder, and so they cannot bring a claim for breach of covenant of good faith and fair dealing.  The claim, like all of plaintiffs' other claims, fails.

## V.    CONCLUSION

WHEREFORE for the foregoing reasons, defendants respectfully request that this Court grant their motion and dismiss plaintiffs' complaint with prejudice.

Respectfully submitted this 20th day of June, 2011.

VAN COTT, BAGLEY, CORNWALL & McCARTHY


_____/s/ Robert Scott_____
Robert H. Scott
*Attorney for Defendants Bank of America, N.A.,
erroneously named as Bank of America, Inc., BAC Home
Loan Servicing LP, Countrywide Home Loans, Inc.,
Countrywide Home Loans Inc. dba America's Wholesale
Lender, Green Tree Servicing, LLC and  Mortgage
Electronic Registration Systems, Inc.,*


## CERTIFICATE OF SERVICE

The undersigned certifies that on the 20th day of June, 2011, the foregoing

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**PLAINTIFFS' COMPLAINT** was served upon the following person in the manner

indicated below at the following addresses:

Ryan West, Esq.
Tyson B. Snow, Esq.
Corvus Law Group, LLC
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
(888) 315-4735
(888) 316-0929
*Attorneys for Plaintiffs*


☐      by **E-mail**
☒      by **CM/ECF**
☐      by **Facsimile Transmission**
☐      by **First Class Mail**
☐      by **Hand Delivery**


_____/s/ Robert Scott_____

4841-0964-4041, v. 1